Good morning, Your Honor. Allow me to introduce myself. My name is Scott Hubbard. I represent the plaintiff and appellate in this matter, Chris Kohler. I know the court is well-versed in the briefs and time is short, so unless the court has any specific questions for me, I'm prepared to reserve the rest of my time. Well, I would... It doesn't go that easily. It never does, Your Honor. What's, I guess, your best argument or why was it problematic for the court to rely on, is it the real rate report? Why was that prejudicial to your client? There is a place for the real rate report in federal jurisprudence, just not with respect to plaintiff's lawyers in ADA access claims. Why not? Because the real rate report, from what we can glean for it, and it wasn't introduced into the record, is the real rate report was based on corporate rates of 80 corporations or 80 people that were surveyed. We don't know the results of the survey. We don't know the methodologies of the survey. We don't know anything about the survey, in fact, who was surveyed. We don't know if it was plaintiff's lawyers. That's a deal breaker in the Ninth Circuit because when determining the market rates for lodestar fee motions, the Ninth Circuit has on twice, two separate occasions, said that you base it on the awards of plaintiff's lawyers. Well, that was just one thing that he consulted. He didn't rely solely on that, so why is that? Well, that brings us to the next two problems. The first one is that he based it on historic rates that were over 10 years old. Isn't it your burden to bring forward evidence to show what's reasonable? And we did, Your Honor. We offered the declarations of two expert witnesses. And so is that what the only thing in your mind or, I mean, that the district courts should look at is the declarations that you offer? Oh, no, of course not. Well, I think that's what, at least that's what I'm trying to figure out. What do you think the district court should have looked to? I assumed as much that you would want him to look at your declarations that you submitted, but what else is fair in your view? In my view, it is also fair to look at what opposing counsel charged. Opposing counsel submitted a declaration saying that he charged $7.45 an hour for ADA cases. That was in this lawsuit and before this judge. We charged $606.25, markedly below that. The historic rate was $350, and that was from 10 years ago. Now, do I believe that the judge can look at the historic rate? Absolutely. The problem is if you look at it too far back, it becomes a straitjacket, as was said in Moreno v. City of Sacramento. Because any policy where you hold the line at the historic rates eventually is going to eat away at the plaintiff's lawyer's ability to generate fees. Because after 3 years, 5 years, 8 years, 10 years, no one else is charging that rate. So that's the problem. Let me ask you another question. We have to give a significant deference to the district court's determination that a downward adjustment from the Lodestar figure was warranted. And so our cases only require the district court to give, I think it's called a clear and concise explanation as to why the adjustment was warranted. And here it seems like the district court issued somewhat of a thorough, reasoned 15-page order with multiple pages explaining the downward adjustment. So just tell me how we can say that was an abuse of discretion given the district court's superior knowledge. The district judge didn't get everything wrong. I mean, I'm not, if you read, I don't accuse the judge of getting everything wrong. But there are two significant parts where he did. The first one was applying the, what he looked for to determine the reasonable hourly rate in this district. Now, we provided. Speak into the microphone. Oh, my apologies, Your Honor. We provided our declarations, our experts' declarations, the defendant's declarations, all of which support an hourly rate of 600 to 625 an hour. Now, he, in turn, relied on the real rate report, which is problematic in the Eastern District for the reasons set forth in the Eastern District in the Federal Court of Claims in the Southern District of New York. He focused on the historical rates that were over 10 years old. And he focused on out-of-district authority from the Southern and Eastern District of California, which charge lower rates. Now, obviously, the court has a phenomenal amount of discretion when it comes to awarding hourly rates and fees. But it's not free to commit errors of law. And I do believe that the way it arrived at those hourly rates constitute an error of law. And as for the second prong, the reduction of fees, the 75%, the district court followed the right process, but in the very end switched to a racial analysis where he calculated and awarded fees based on the ratio of the amount of monetary compensation we received. Now, that's problematic. The Supreme Court has rejected that, a one-to-eight ratio, a one-to-six ratio. He wouldn't have considered that if he wasn't going to, if that wasn't the formula he was following. And so reducing our fees 75%, where we received the maximum amount of damages we were entitled to under the law. You're not telling us that the level of success wasn't limited, though. I mean, there's much made in the briefing about it wasn't de minimis. But there's no dispute that it was limited success, correct? There's no dispute that it was limited success with respect to the barriers. With respect to the amount of monetary damages we received, it was the maximum. We couldn't have gotten, he wasn't actually injured. The statute provides. But it wouldn't be proper to rely on the monetary award only in determining whether the reduction was accurate or reasonable, would it? No, but it wouldn't be permitted to rely on the monetary damages only when determining the amount of success. Counsel, you said that the reduction violated Riverside v. Rivera. Yes. So could you point me to the precise language in Riverside v. Rivera that invalidated the reduction in the award? I can't at this moment because I didn't bring that case with me. With the court's permission, I'd like to do a 28-J letter, and I can cite to it. Please don't send us anything unless we ask for it. But because you were relying on that case, I thought surely you would know the language in that case that supports your argument. I would, Your Honor. Yes, and that's why I asked for the court's permission. But second, as good as I am, I don't memorize every case that I cite. And when the court asked me to pinpoint it, I can't. I'm not that good. My apologies. And I have 2 minutes and 42 seconds. I'd like to save some for rebuttal. All right. Thank you, Counsel. Thank you, Your Honor. Good morning. John Muir, Seifarth Shaw for Defendant Eddie Bauer. Let me begin by addressing a point that has been overlooked by Mr. Hubbard, which is that in all of the cases where he has been awarded fees, and the district court looked at 36 of them that even overlapped the trial in this case, he has not been awarded the rates that he claims. The rates range from about $245 an hour to about $345 an hour. And the amounts of fees have a median of about, I have these exact numbers. A median of $12,795 and an average of $20,951. What's the average hourly rate? The average hourly rate ranges from about $245 an hour to about $345 an hour. There are different rates depending on senior partners that Mr. Hubbard's firm or associates being used. Here the rate was $310, $300 an hour? Yes. Can you point to anything in the district court's decision here that reflects that the district court understood that it was supposed to determine the current reasonable hourly rate as opposed to the historically reasonable rate? Because I'm trying to figure out why wasn't it an abuse of discretion if the district court used outdated evidence regarding reasonable rates? Because it looks like some of them went back to 2010. Some of them did go back to 2010. The case was filed in 2010 and the trial took place in 2013. And so it is reasonable to look at rates charged during that time because that's when the work occurred. But even Mr. Hubbard, and the district court noted this, this is in supplemental excerpts of record page 26, Mr. Hubbard said, look at the rates approved in Kohler, same plaintiff, versus Bed Bath and Beyond, which was a central district of California case litigated in 2012 where the rates were $350 an hour. No court has ever awarded higher rates than that for these types of cases involving the Hubbard law firm. And so even though the rates have remained the same for a number of years, every court who has looked at this has kept those rates at that level. Why isn't that relative of the hold the line theory that's been criticized? There isn't a hold the line theory. It's a nice label to put on a non-conspiracy that every judge in all of the district courts have decided to keep the rates at that amount, but that is the amount that is charged for this type of ADA litigation. It's not complex. It's a commodity type of work. Let me ask you this, counsel. Should the change in circuit-wide precedent that was a result of this case, should that be taken into account in determining the level of success? Partly, but let me first answer that. There wasn't really a change in circuit-wide precedent in this case because there was a use of a clipboard as a temporary measure until the counter was fixed, and that's what Eddie Bauer was using the clipboard for. And so we weren't arguing that. Oh, but the Ninth Circuit decision, you don't think that was a change in precedent? The Ninth Circuit held that an equivalent facilitation can be a temporary measure. If your door handle is broken, you can put on a different door handle until a new one arrives. If your counter is not high enough, you can use a clipboard while you're raising the counter. That's what Eddie Bauer was doing, and that's what the Ninth Circuit held was proper to do. We weren't arguing that the clipboard can be a permanent equivalent facilitation. Well, rather than the remodeling of this particular store and the $8,000 that was paid, wasn't there some additional benefit to the public that came out of this case that should be taken into account in determining the overall level of success? That's my question. Sure. And I think the Court did take that into account by awarding 25 percent of the proper lodestar amount. Mr. Kohler pursued claims that were absolutely frivolous about barriers that didn't exist. A pay point machine that was never there. A dressing room bench that courts had ruled over and over was compliant. We had to go all the way through trial in order to get those claims dismissed. And at the end of the day, he lost everything. A case unrelated to this, Strong v. Valdez, came out and said you can use estimates to measure barriers. You know, counsel, we're well past the merits of the case. We're talking about attorney's fees. Let me ask you this question. The district court referred to several cases in its opinion and identified those as similar as justification for this downward departure. Beyond those being ADA cases, where is the explanation from the district court as to the real similarity? Why is that not just a conclusory broad brush statement, even though there are multiple cases referred to? The similarities are that there are ADA cases where multiple claims were alleged and most of the claims were not successful and some of the claims were successful. And so the court had looked under Hensley v. Eckhart U.S. Supreme Court analysis of where you pursue many claims and most of them are unsuccessful, that you have to reduce the fees to account for the level of success. The case is... Hensley says you may reduce the fees. It doesn't say you have to, does it? It says the most important factor is the degree of success. Isn't this case distinguishable because a plaintiff had to litigate for six years to obtain relief? Well, plaintiff didn't obtain any relief, Your Honor. He lost a trial. The case was remanded and instead of going through a second trial, we were able to settle for much less than the cost of trial. We settled for $8,000. But there was never a finding... But that's the maximum allow. No. The statute allows actual damages as well and that's what plaintiff was claiming. The issue was in order to even get the statutory damages, plaintiff had to approve difficulty, discomfort or embarrassment. And that was what was going to be the issue for trial. That was never decided by the court and plaintiff never prevailed. We settled and to say that if you settle for $8,000, someone should be able to recover over half a million dollars in attorney's fees representing 970 hours of work is appropriate for the district court to reduce that based on the level of success in this case. In terms of the level of success, we talked about the Ninth Circuit opinion. It also held that California's attorney's fee statute was preempted by the federal ADA attorney's fee statute, which it seems makes it harder for a successful defendant in an ADA case to recover fees. That should not be factored in in terms of the success? That shouldn't be factored into terms of success because the issue was success on the merits in the case, not the success in the case. The issue is was the plaintiff successful on the claims alleged in the complaint and the barriers alleged in the complaint, not on the standard for granting attorney's fees. What's the authority that it's the level of success on solely the merits of the case and not the broader context of what's at issue and the future benefits to the public? Hensley and Chavez v. City of Los Angeles both talk about the results obtained for the plaintiff, the results obtained in the case. Isn't that broader than just on the actual theories asserted in the litigation? I think it refers to... Or are you overly narrowing? I don't believe I'm overly narrowing because all of those cases look at the claims that were alleged in the complaint and was the plaintiff successful on those claims. There can be benefits to any litigation, I suppose, in publicity or awareness or people taking precautionary measures to avoid  I don't think that's the case. And because those are so intangible, you look to was the plaintiff successful on the claims that were brought. Someone looked like they had another question. I'm sorry. I didn't want to interrupt. What about the real rate report? The real rate report has been used by, and we cited this in our papers, the Central District of California in numerous cases. And it is just one tool to be used by a district court judge in setting the rates. In our case, the district court judge looked at the real rate report, and he also looked at the opinions in 36 other cases where Mr. Hubbard was the lawyer and the rates that were allowed in those cases. And those cases spanned not just back 10 years, but through the date of the trial and through the date of the work performed here. Mr. Hubbard submitted two conclusory declarations from experts that say his rate should be $600 an hour, but no court has ever awarded the rates that he has requested. He referred to, I once asked for $745 for my work in ADA litigation, and I had the same result that Mr. Hubbard had. The court said, no, the rate should be in the $300 range. That's not the rate that ---- No, because you didn't give it, he shouldn't give it? Well, if you look at rates in the community for similar work, for lawyers of similar experience and similar success, in my case, it was a summary judgment that was a complete summary judgment for the defendant, and the court said that for this type of litigation, the rate in the community is in the $300 range. But I thought Mr. Hubbard quoted a $625 hourly rate for the defendant's work on the district court. I have never been awarded a $625 an hour rate for this type of work. The case where I was awarded fees, it was a blended rate of, I believe, $345 an hour. All right. Thank you, counsel. You've exceeded your time. Thank you. Mr. Hubbard, did I understand you correctly? Where did you get the information that defendants were paid $625 an hour for similar litigation? The defendant has never been paid $625, and it was the case cited by defense counsel, Kohler v. Bed Bath & Beyond. He's correct that the judge awarded $350, but I cited to it because defense counsel in that case also asked for $625. And in this case, the defendant, the court didn't reduce his hourly rate to $350. He reduced it, or $345. He advanced the blended rate. He said I normally charge $7-something. In this case, for my hourly rate, I'm reducing it to a blended rate for everyone of $345. But he did charge the, he said he normally charges $745, as did the defense counsel in Kohler v. Bed Bath & Beyond, as we did here. That's not the same Kohler we have in this case, or is it? It is, insofar as we're having at least the same plaintiff. And it was the same law firm, so I had a first-hand experience with it. But it's also a case where you have a lawyer saying this is the market rate and receiving markedly less. Two other points I wanted to make. Number one is the Lodestar calculation incurred factors do not include a statistical averaging. You're not allowed to do that when calculating the fees. Number two, actually, he keeps citing the 36 cases that he cited and supported these hourly rates. Those 36 cases included Southern and Eastern District of California wards. I mean, along with the historical ones. So the reason we didn't have any more recent cases in the Central District is because we didn't have any more recent fee motions. So for 10 years we've been getting the same fees. For six of those years we've been complaining that we're getting historical rates. And today we can't get anyone, not defendants or plaintiffs' lawyers, to get the market rate for ADA lawyers. And I know everyone cites the real rate report. We're not labor and employment lawyers. We don't represent corporate people. It's a different billing methodology, as the Court of Claims explained. What's your response to opposing counsel's observation that this is kind of routine work? It's not complicated enough to? There was absolutely nothing routine about this case. The last time I argued this case it was next door. We argued that case. I argued for two and a half hours straight. The court lined up every case involving this issue. We argued, I argued against ten different, five different firms on six different circuit-wide issues of first impression. We produced five different published opinions out of that case. There was nothing routine about this case. All right. Thank you, counsel. Thank you, Your Honor.
judges: Rawlinson, Murguia, Gilstrap